COUNTIES – PUBLIC BUILDINGS AND GROUNDS – OPEN MEETINGS ACT – CONSTITUTIONAL LAW – FREEDOM OF SPEECH – ACCESS TO PRIVATE GROUP MEETING IN A COUNTY BUILDING

August 4, 1995

*The Honorable Walter B. Dorsey*
*State's Attorney for St. Mary's County*

You have requested our opinion whether a member of the press may be excluded from a private meeting held in a public building. Your letter indicates that several employees of St. Mary's County held a meeting in the County Office Building after hours to discuss critical statements made by a local publisher. A newspaper reporter attempted to attend this meeting and allegedly was forcibly removed. The reporter has asked that criminal charges be filed as a result of the removal.

In our opinion, a county may allow private groups to hold meetings in public buildings. A group holding such a meeting may bar uninvited members of the public, including members of the press.[1]

## I

### Private Meetings on Government Property

"The Government's ownership of property does not automatically open that property to the public." *United States v. Kokinda*, 497 U.S. 720, 725 (1990). In general, a person may be arrested for trespass on public property if the person has no lawful business on the property and fails to leave when requested. *See Anderson v. State*, 12 Md. App. 186, 278 A.2d 439 (1971), *appeal dismissed*, 405 U.S. 1050 (1972); *People v. Thompson*, 372 N.E.2d 117 (Ill. App. 1978). A person may also be arrested for trespass if

---

[1] We express no opinion on whether criminal or civil liability might result from the manner in which the reporter was removed from the meeting.

the person's activities interfere with the ordinary use of the property. *See People v. Hedeman*, 438 N.Y.S.2d 172 (N.Y. App. Div. 1981).

However, the government need not exclude the public. A governmental owner of property generally has the power to allow the public to use the property for private purposes, at least at times when the property is not otherwise in use. *See* 10 Eugene McQuillan, *Municipal Corporations* §28.42.05 (3d ed. 1990). For example, in *Gottlieb-Knabe Co. v. Macklin*, 109 Md. 429, 71 A. 949 (1909), the Court of Appeals held that no law was violated when Baltimore City leased an old school to a Maryland National Guard unit for use as an armory; the armory was then rented out episodically to private groups.

Similarly discretion over the use of public property is vested by law in county government. Like other county commissioners, the St. Mary's County Commissioners "shall have charge of and control over the property owned by the county ...." Article 25, §1 of the Maryland Code. Hence, they have the discretion to make a meeting room in a county building available to private groups.

When public property is made available for private use, that private use may be protected from intrusion by the laws against trespassing. For example, in *Crowder v. Housing Authority*, 990 F.2d 586, 593 (11th Cir. 1993), an interloper was held to have been lawfully arrested for failure to leave an area in a public housing project that others were using for their particular private purpose. *See also Otwell v. State*, 850 S.W.2d 815 (Tex. App. 1993) (demonstrator arrested for failure to leave private reception held on public property).

Our research has revealed no principle of law that would prevent the application of these general rules in this case. Specifically, we have concluded that neither the Open Meetings Act nor the First Amendment would grant the press a right to attend a private, after-hours meeting of County employees.[2]

---

[2] In addition, we have examined the public local laws that relate to St. Mary's County and have found no applicable provisions. In particular, Article 24, §4-203 is inapplicable on these facts.

## II

## Open Meetings Act

The Open Meetings Act, Title 10, Subtitle 5 of the State Government ("SG") Article, Maryland Code, provides that except as otherwise expressly permitted, a "public body shall meet in open session." SG §10-505. A "public body" is an entity that:

(i)   consists of at least 2 individuals; and

(ii)  is created by:

1.   the Maryland Constitution;
2.   a State statute;
3.   a county charter;
4.   an ordinance;
5.   a rule, resolution, or bylaw;
6.   an executive order of the Governor; or
7.   an executive order of the chief executive authority of a political subdivision of the State.

SG §10-502(h)(1). "Public body" also includes any board, commission, or committee appointed by the chief executive authority of a political subdivision if the board, commission, or committee contains at least two members who are not employees of the subdivision. SG §10-502(h)(2).

As we understand the facts, the group of employees that met in the County Office Building was not created by constitution, statute, ordinance, rule, or executive order. Nor were the group's members chosen by any public official of St. Mary's County. Instead, the group was an informal gathering of employees who wished to discuss a matter of mutual interest. This group of employees simply is not a "public body" required by the Open Meetings Act to meet in open session.[3] Therefore, the Act did not create a right of access for the press.

---

[3] The Open Meetings Compliance Board reached the same conclusion about a group of employees of the Charles County Board of Education. Compliance Board Opinion 92-2, at 3 (October 23, 1992).

## III

### First Amendment

The First Amendment does not create a general right of access to government property.[4]  For example, in *Houchins v. KQED*, 438 U.S. 1 (1978), the Supreme Court held that the First Amendment did not grant the press a right to have access to a county jail for news-gathering purposes.  In fact, the First Amendment has been held not to create any right of access to information by the press beyond that available to the general public.  *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972); *Group W Television v. State*, 96 Md. App. 712, 717-18, 626 A.2d 1032 (1993); 77 *Opinions of the Attorney General* 183, 186 (1992).

Thus, the press is subject to generally applicable laws, even if those laws incidentally hinder reporters' ability to gather information.  *Cohen v. Cowles Media Company*, 111 S.Ct. 2513 (1993); *Central South Carolina Chapter, Soc. of Professional Journalists v. Martin*, 431 F. Supp. 1182 (D.S.C.), *aff'd* 556 F.2d 706 (4th Cir. 1977), *cert. denied*, 434 U.S. 1022 (1978).  *Cf. Prahl v. Brosamle*, 295 N.W.2d 768 (Wis. 1980) (press has no First Amendment privilege against action for trespass).  "Crimes and torts committed in newsgathering are not protected [by the First Amendment]."  *Gallella v. Onassis*, 487 F.2d 986, 995 (2d Cir. 1973).

Moreover, for First Amendment purposes, government restrictions on access to property are subject to less heightened scrutiny when the government is acting as a proprietor, managing its internal operations, than when it acts as a lawmaker, exercising its power to regulate or license.  *International Soc. for Krishna Consciousness v. Lee*, 112 S.Ct. 2701, 2705 (1992) (hereafter cited as "ISKCON").  As a proprietor, the government may regulate to preserve the property for the use to which it is properly dedicated.

---

[4] The freedoms of speech and press are also protected by Article 40 of the Maryland Declaration of Rights.  Article 40 is generally construed in the same way as the First Amendment.  *See, e.g., WBAL-TV v. State*, 300 Md. 233, 243 n.4, 477 A.2d 776 (1984); *Sigma Delta Chi v. Speaker*, 270 Md. 1, 4, 310 A.2d 156 (1973); *Freedman v. State,* 233 Md. 498, 505, 197 A.2d 232 (1964), *rev'd on other grounds*, 380 U.S. 51 (1965).

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 50-51 (1985).

For First Amendment purposes, limitations on access to government property are judged by standards that reflect the type of forum involved. Areas that are traditionally available for public expression, like public parks and sidewalks, may be restricted only if the limitation is narrowly drawn to serve a compelling public interest. *ISKCON,* 112 S.Ct. at 2705. In addition, an area that is not traditionally available for public expression may be designated as a public forum. Once so designated, limitations on access to the forum are subject to the same strict scrutiny as is applicable to traditional public forums. *Id.* Finally, as to the remainder of public property – referred to as nonpublic forums – a limitation on access need only be reasonable, so long as it is not an effort to suppress the speaker based on disagreement with the speaker's views. *Id.*

Government office buildings have not traditionally been available for public expression. Nor does the fact that members of the public are permitted to enter a place owned and operated by the government make it a public forum. *ISKCON,* 112 S.Ct. at 2706. That some communication occurs in a place is not alone indicative of a public forum. *Hedges v. Wauconda Community Unit School Dist. 118*, 807 F. Supp. 444 (N.D. Ill. 1992). Even the fact that access is permitted on a selective basis does not render a forum public, *Perry Educ. Ass'n*, 460 U.S. at 47, although permitting access to a wide variety of groups may do so, *Lamb's Chapel v. Center Moriches School Dist.*, 113 S.Ct. 2141, 2146 (1993).

In our view, a government's decision to make office space available for occasional meetings of employees does not mean that the government created a public forum. *Cf. Perry*, 460 U.S. at 46 (teacher mail boxes remain a nonpublic forum although available for private communications between teachers). "Irregular and infrequent use does not transform a common facility into a public forum ...." *Crowder v. Housing Authority*, 990 F.2d at 991.

Even if the property were made available to a variety of groups, however, that fact would, at most, render the property a public forum for group access – that is, various groups could use the space when it was available. But when any given group uses the property, that group would retain its prerogative to define the nature of the event. Sometimes the private group would intend its event to

be open to all comers, effectively creating a public forum for that event; at other times, the private group would intend its event to be limited to invitees, maintaining a nonpublic forum. The First Amendment does not bar the latter. For example, in *Otwell v. State*, 850 S.W.2d 815 (Tex. App. 1993), a city had leased a park for one evening for a private group's reception. "The reception was not open to members of the general public. Indeed, only [the group's] members and invited guests were admitted .... Therefore, on [that] evening ... the [park] was a nonpublic forum ...." 850 S.W.2d at 817.

Here, the use was for a meeting of the type that is traditionally not open to the public and that clearly could be closed to the public if held on private property. Therefore, the meeting in question was a nonpublic forum, and members of the press could be excluded.


J. Joseph Curran, Jr.
*Attorney General*

Kathryn M. Rowe
*Assistant Attorney General*

Jack Schwartz
*Chief Counsel*
  *Opinions and Advice*